# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
### ATHENS DIVISION

ALICE FELTS                 :
                                 :

        Plaintiff,         :
                                 :

       v.                  :    CIVIL ACTION FILE NO.
                                 :

PAMELA THAXTON,       :   _____
NATIONWIDE LIFE INSURANCE  :
COMPANY and NATIONWIDE    :
LIFE AND ANNUITY INSURANCE :
COMPANY,                :
                                 :
        Defendants.      :

## RENEWAL COMPLAINT

## NATURE OF THE ACTION

1.

Plaintiff Alice Felts files this Complaint seeking to invalidate an alleged beneficiary change on an annuity-investment account held by Mr. David A. Silvian, deceased.

2.

Ms. Thaxton unduly influenced Mr. Silvian to make her the beneficiary of the account at a time when he lacked the mental capacity to change the annuity beneficiary.

3.

Ms. Felts seeks an award of money damages for undue influence in the total amount of the annuity (approximately $288,000), as well as attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11.

4.

In the alternative, Ms. Felts seeks a declaration under Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 that she is the sole beneficiary of the annuity and asks the Court to otherwise declare the rights, legal obligations and questions of actual controversy between the parties to this action relating to the annuity.

5.

Finally, Ms. Felts seeks injunctive relief under Federal Rule of Civil Procedure 65 by requesting the Court continue to restrict access to the annuity account pending the outcome of this case, as these parties have otherwise agreed to do, and thereby maintain the status quo regarding the funds in such account.

**PARTIES, JURISDICTION, AND VENUE**

6.

Plaintiff Ms. Felts is domiciled in the State of Virginia and has lived in Virginia continuously for nearly twenty years.

7.

Although Ms. Felts is the Executor of David Silvian's Estate, she brings this action in her individual capacity as the originally and properly named beneficiary of the annuity account.

8.

Defendant Ms. Thaxton is an individual residing at 60 Thrasher Drive, Watkinsville, Georgia 30677, where she may be served with process. After such service, Ms. Thaxton shall be subject to the personal jurisdiction of this Court.

9.

Defendant Nationwide Life Insurance Company ("Nationwide Life Insurance") is an Ohio corporation, which is registered to transact business and does business in Georgia.

10.

Nationwide Life Insurance may be served through its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092. After such service of process, Nationwide Life Insurance shall be subject to the personal jurisdiction of this Court.

11.

Defendant Nationwide Life and Annuity Insurance Company ("Nationwide Life and Annuity") is an Ohio corporation, which is registered to transact business and does business in Georgia.

12.

Nationwide Life and Annuity may be served through its registered agent, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092. After such service of process, Nationwide Life and Annuity shall be subject to the personal jurisdiction of this Court.

13.

This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy, exclusive of interest and costs, exceeds $75,000, and because the parties are domiciled in different states.

14.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant Ms. Thaxton resides in this District and Division.

**RENEWAL**

15.

This is a renewal action pursuant to O.C.G.A. § 9-2-61, which reinstitutes suit of Civil Action File No. 2018CV0985, Superior Court of Athens-Clarke County,

Georgia (the "Original Action"), which was voluntarily dismissed without prejudice on December 10, 2024 at 2:57 PM. *See Dismissal without Prejudice*, **Exhibit 1** hereto.

16.

True and correct copies of the relevant, substantive pleadings and opinions in the Original Action are attached hereto collectively as **Exhibit 2**. Ms. Felts requests this Court take judicial notice of all such documents. *See Brantley County Dev. Partners, LLC v. Brantley County, Georgia*, 559 F. Supp. 3d 1345, 1364 (2021) (pursuant to Fed. R. Evid. 201(d), judicial notice of public records and other adjudicative facts may be taken at any stage of the proceeding).

17.

Ms. Felts renews and incorporates herein by express reference the averments in the Original Action which were not otherwise voluntarily dismissed or disposed of by the Court in the Original Action.

18.

All Defendants were validly served with process in the Original Action and at no time therein did they contest the court's jurisdiction.

19.

The Original Action was not void and was instead valid such that it may be properly renewed herein. *See Jester v. Emerson Climate Techs., Inc.*, 849 Fed. Appx. 849, 852-53 (11th Cir. 2021).

20.

This Renewal Complaint is substantially based on the same causes of action and is entirely based upon the same set of facts giving rise to the causes of action set out herein and in the Original Action.

21.

As the Original Action was not dismissed on its merits, no Defendant was dismissed with prejudice therein, and the Original Action was not otherwise void; accordingly, the Renewal Action relates back to the filing date of the Original Action, and no statute of limitations otherwise bars the claims asserted in the Renewal Action.

22.

All fees and costs of the Original Action, if any, have been paid by Ms. Felts or are being paid concurrently herewith.

6

## FACTUAL ALLEGATIONS

**A.    The Relationship Between Ms. Felts and Mr. Silvian**

23.

Alice Felts and David Silvian were great friends beginning in the mid-1990s.

24.

Alice and David were married for a few years, in the early 2000s. After their marriage ended, Ms. Felts remained Mr. Silvian's best friend, trusted confidante, and his primary supporter from then on.

25.

Mr. Silvian died on April 22, 2018, shortly before his 81st birthday.

26.

Ms. Felts was always named as the Executor of David Silvian's Last Will and Testament, as well as the primary or sole beneficiary of his Will, since 2000.

27.

Ms. Felts had Mr. Silvian's healthcare powers of attorney since 1999.

**B.    Mr. Silvian's Bad Health Deteriorates**

28.

Mr. Silvian had many complicated medical problems throughout his life, including tuberculosis as a young man and cancer in his forties.

29.

Mr. Silvian's physical and mental health more rapidly declined, beginning in 2013.

30.

In 2014, Mr. Silvian's heart problems progressed to where he was required to have an open-heart, valve-replacement surgery.

31.

Mr. Silvian suffered from psychiatric problems such as anxiety and depression, which became more severe as he struggled to recover from his open-heart surgery in 2014.

32.

Mr. Silvian also suffered from kidney failure, which required a great deal of care and treatment, the symptoms from which increased and worsened in 2014.

33.

Mr. Silvian underwent surgery in 2014 to have a tumor removed from his bladder.

34.

In summary, by 2014, Mr. Silvian was suffering from multiple cardiac problems, including atrial fibrillation and obstructive coronary artery disease; chronic kidney disease; cancer (post-chemotherapy); hypertension; anxiety and

depression; bladder and urological problems; shingles; tuberculosis; glaucoma; anemia; and undefined leg pain. These problems continued and worsened until he died in April 2018.

35.

In summary, by 2014, Mr. Silvian was actively being treated by a cardio-thoracic surgeon, a cardiologist, a urologist, a gastroenterologist, a psychiatrist, and his primary-care physician, Dr. James Cobb.

36.

With his medical troubles so heavily weighing on his mind, Mr. Silvian's behavior became increasingly erratic, such that he was involuntarily committed to a psychiatric facility in 2016.

37.

While involuntarily committed to the psychiatric facility, Mr. Silvian suffered from delusions, dysphoria, disorganized and anxious thoughts, poor insight, and poor judgment.

38.

Mr. Silvian was released from the psychiatric facility with a diagnosis of "severe persistent mental illness," for which he was prescribed numerous medications.

39.

Approximately one year later, on February 1, 2017, Mr. Silvian suffered a fall, which resulted in several orthopedic injuries.

40.

Upon receiving emergency care for this fall, Mr. Silvian was found not to have followed through on the anti-psychotic medications prescribed for him a year earlier.

41.

Mr. Silvian was then transferred to a longer-term rehabilitation facility, from which he was ultimately discharged on February 20, 2017.

42.

Upon discharge from the longer-term facility, Mr. Silvian suffer from delirium, suicidal ideations, short- and long-term memory problems, renal failure, frequent falls, severe heart problems, pain and difficulty ambulating, and other medical and psychiatric illnesses.

**C.     Ms. Felts Continues to Help Mr. Silvian**

43.

Ms. Felts remained in constant contact with Mr. Silvian throughout their friendship, speaking on the phone almost every day, often several times a day, until approximately one month before Mr. Silvian passed away, when she could no longer get in touch with him.

44.

Ms. Felts and Mr. Silvian often discussed Mr. Silvian's complicated medical problems, his doctors, and his mental and psychiatric treatments.

45.

When he was discharged from the rehabilitation facility, Mr. Silvian planned to return home where he would be assisted by at-home care providers. However, the person designated for this role suffered an injury the same Mr. Silvian returned from the rehabilitation facility, which required Mr. Silvian to find a new arrangement.

46.

Ms. Felts helped Mr. Silvian find a facility which would provide him with the requisite care and treatment.

47.

Ms. Felts and Mr. Silvian were able to get in touch with Arbor Terrace of Athens, and on February 23, 2017.

**D.    Ms. Thaxton Immediately Begins to Influence Mr. Silvian**

48.

Either on February 23 or 26, 2017, Arbor Terrace sent Ms. Thaxton to Mr. Silvian to help Mr. Silvian move into Arbor Terrace.

49.

Mr. Silvian officially became a resident of Arbor Terrace on March 1, 2017, but may have moved into his room at Arbor Terrace a few days earlier.

50.

As early as March 3, 2017, Ms. Thaxton began accessing Mr. Silvian's personal financial information.

51.

When Ms. Thaxton first met Mr. Silvian, she had reason to believe that he was financially secure and that he had no relatives in the Athens area.

52.

Ms. Thaxton immediately began to act to take advantage of Mr. Silvian's weakened physical and mental condition and diminished capacity.

53.

Within a few days of first meeting him, Ms. Thaxton somehow convinced Mr. Silvian that she should act as his "bookkeeper."

54.

Mr. Silvian told Ms. Felts that Ms. Thaxton was his bookkeeper and that he believed Ms. Thaxton could be trusted in that role.

55.

Ms. Thaxton established a confidential relationship with Mr. Silvian by the trust and confidence he reposed in her and by allowing her to access his otherwise private, confidential, and sensitive financial information and documents.

### E.    The Nationwide Annuity

56.

Through Nationwide Life Insurance and Nationwide Life and Annuity (collectively, "Nationwide"), Mr. Silvian's obtained an individual single-premium and immediate fixed annuity, contract ending -3984 (the "Nationwide Annuity") in May 2015, wherein Mr. Silvian was the Annuitant and Ms. Felts was the Beneficiary.

57.

On March 8, 2017, Nationwide was contacted by someone – Ms. Thaxton, on information and belief – inquiring as to the funds that were then available to be paid out of the Nationwide Annuity.

58.

On March 8, 2017, a "Beneficiary Change Request for Income Products" form was sent to Nationwide to change the Beneficiary from Ms. Felts to Ms. Thaxton.

59.

Ms. Felts did not know of the Nationwide Annuity until after Mr. Silvian died. She then discovered that she was the Beneficiary of the Nationwide Annuity, as stated by Mr. Silvian's original documentation in May 2015.

60.

Ms. Felts also discovered the Beneficiary Change Request from March 2017, wherein Ms. Thaxton sought to become the Beneficiary.

61.

Ms. Felts challenged the Beneficiary Change Request by naming Ms. Thaxton and Nationwide as Defendants in the Original Action.

## COUNT I – UNDUE INFLUENCE

62.

Plaintiff incorporates by reference all preceding paragraphs as if restated verbatim herein.

63.

Ms. Thaxton has no explanation for why Mr. Silvian would have made her the Beneficiary of the Nationwide Annuity.

64.

Having known Mr. Silvian for a few weeks by the time he allegedly made the beneficiary change, Ms. Thaxton was not the natural object of his generosity.

65.

Ms. Thaxton filled out all the entries on the Beneficiary Change Request form to make herself the Nationwide Annuity Beneficiary, at a time when she isolated Mr. Silvian in his room at Arbor Terrace. Only Ms. Thaxton was present when he supposedly signed the document.

66.

The signature on the Beneficiary Change Request form does not appear to be that of Mr. Silvian, which is suggestive of undue influence by means of deception. It was not Mr. Silvian's signature, or he did not know what he was signing.

67.

If Mr. Silvian signed the Beneficiary Change Request, as alleged by Ms. Thaxton, she took advantage of his weak physical and mental condition to overpower his will and to unduly influence him to do so, which invalidates any such change to the Nationwide Annuity.

68.

If Mr. Silvian made the change as alleged by Ms. Thaxton, Mr. Silvian lacked the mental capacity to do so, which also invalidates the change to the Nationwide Annuity.

69.

Mr. Silvian was a person of severely diminished physical and mental capacity when he met Ms. Thaxton and when he allegedly signed the Beneficiary Change Request, such that a lesser degree of influence by Ms. Thaxton was necessary to overcome his free will and change the beneficiary from Ms. Felts (the person he described as his best friend for over twenty-five years) to Ms. Thaxton (who he had known superficially for a few weeks, at most).

70.

The unreasonableness of the benefits received by such a person as Ms. Thaxton further demonstrates her undue influence over Mr. Silvian.

71.

Mr. Silvian believed that Ms. Thaxton was his bookkeeper, which thereby showed that she occupied a position of confidence when Mr. Silvian gave her access to his confidential, private, and sensitive documents and financial information.

72.

Ms. Thaxton was not the natural object of Mr. Silvian's generosity and took an active role in fully completing the Beneficiary Change Request form, which further demonstrates Ms. Thaxton unduly influenced Mr. Silvian.

73.

Such influence by Ms. Thaxton was undue because Mr. Silvian was coerced into doing that which he never would have done in his best judgment, if he had been mentally able and competent to make such decisions on his own.

74.

If any such beneficiary change to Ms. Thaxton occurred, such change is properly attacked by the original and rightful Beneficiary, Ms. Felts

75.

Plaintiff Ms. Felts is thus entitled to damages in the amount of the Nationwide Annuity, in addition to an award of attorney fees and court costs, all as a direct and proximate result of Ms. Thaxton's undue influence over Mr. Silvian.

**COUNT II – ATTORNEYS' FEES UNDER O.C.G.A. § 13-6-11**

76.

Plaintiff incorporates by reference all preceding paragraphs as if restated verbatim herein.

77.

Under O.C.G.A. § 13-6-11, Ms. Felts may recover litigation expenses and attorneys' fees because Ms. Thaxton has acted in bad faith, has been stubbornly litigious, and has caused Ms. Felts unnecessary trouble and expense.

78.

Ms. Thaxton has acted in bad faith by unduly influencing Mr. Silvian as described in detail herein.

79.

Ms. Thaxton has also been stubbornly litigiousness and caused Ms. Felts unnecessary trouble and expense because she knows that Mr. Silvian never intended to make her the Beneficiary of the Nationwide Annuity.

80.

Accordingly, Ms. Felts is entitled to an award of attorneys' fees and expenses in an amount to be proven at the trial of this case or proper presentation of the evidence.

**COUNT III – DECLARATORY JUDGMENT**

81.

Plaintiff reincorporates the allegations contained in the preceding paragraphs as if restated verbatim herein.

82.

As set forth herein, Ms. Felts and Ms. Thaxton have competing claims to the funds in the Nationwide Annuity and otherwise have adverse legal interests from one another. There is thus a substantial controversy between parties with opposing

legal interests as required by the Declaratory Judgment Act, 28 U.S.C.A. § 2201, which provides the statutory basis for this cause of action, as asserted herein.

83.

The actual and substantial controversy described herein is supported by specific and immediate facts, which allow this Court to render a conclusive legal judgment; namely, the Court should find that Ms. Felts and not Ms. Thaxton is the Beneficiary of the Nationwide Annuity. *See* 28 U.S.C.A. § 2201; *see also* U.S.C.A. Const. Art. III § 2, cl. 1 (limiting federal judicial power to actual cases or controversies).

84.

A declaratory judgment shall be useful to these parties, shall serve to clarify and settle the legal rights and relations in issue, and shall serve to terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to these proceedings.

85.

Accordingly, Ms. Felts seeks a declaration under Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 that she is the sole Beneficiary of the Nationwide Annuity.

## COUNT IV – INJUNCTIVE RELIEF

### 86.

Plaintiff reincorporates the allegations contained in the preceding paragraphs as if restated verbatim herein.

### 87.

As noted in the Original Action, Nationwide has agreed to restrict the Nationwide Annuity until a final judgment of the Court is rendered regarding the disposition of the Nationwide Annuity proceeds. *See* **Exhibit 2a** (FELTS_000043-00046, 000066-000067).

### 88.

In an abundance of caution, Ms. Felts presently seeks injunctive relief to keep the Nationwide Annuity account restricted until this Court enters a final judgment as to the disposition of the Nationwide Annuity.

### 82.

Ms. Felts shows that there is a substantial likelihood of success on the merits of her claim for undue influence, as set forth in detail hereinabove.

### 83.

Ms. Felts further shows she will suffer irreparable harm if the Nationwide Annuity is not restricted because Ms. Thaxton would, if permitted to access the Nationwide Annuity account, dispose of the proceeds and leave Ms. Felts unable to

collect a money judgment equal to the amount of the Nationwide Annuity. *See JPMorgan Chase Bank, N.A. v. 29-33 Ninth Avenue, LLC,* 710 F.Supp.3d 259, 276 (2024) (the court issued an injunction against interpleader defendants due to conflicting claims over control and access to funds in certain accounts and froze the accounts to prevent any payments or withdrawals without specific authorization, thereby restricting access to the funds until the dispute was resolved).

83.

Granting an injunction restricting the Nationwide Annuity during the pendency of the case will not result in irreparable harm to the Nationwide Defendants or Ms. Thaxton because these parties and the court in the Original Action previously agreed or decided that the Nationwide Account should otherwise be restricted until a final judgment is entered as to the disposition of the account.

84.

The grant of such injunctive relief would merely maintain the status quo, would not be detrimental to any party, and would not, therefore, be adverse to any public interest.

WHEREFORE, Plaintiff prays for the following relief:

(a)    That this Court issue an injunction restricting access to the Nationwide Annuity, as described herein;

21

(b)    That upon the jury's verdict or upon the Court's issuance of declaratory relief, that the Court enter judgment in favor of Plaintiff Ms. Alice Felts and that she have the sole and exclusive rights as the Beneficiary of the Nationwide Annuity;

(c)    That Plaintiff have judgment against Defendant Ms. Pamela Thaxton for compensatory damages, expenses of litigation, and reasonable attorneys' fees recoverable under Georgia law;

(d)    That if any claims remain for adjudication by a jury, that such claims be tried to a jury; and,

(e)    That Plaintiff have such further and additional relief as this Court may deem just and proper in the circumstances.

Respectfully submitted this 10th day of December, 2024.

HUESTIS LAW, LLC

*/s/ Robert S. Huestis*

_____

Robert S. Huestis
Georgia Bar No. 374740
**Counsel for Plaintiff**
160 Tracy Street, Unit 2
Athens, Georgia 30601
(404) 597-4494
Rob@GaBusinessDisputes.com